May it please the Court, my name is Robert Richman. I represent the appellants Michael Luedtke, Ira Goodwin, and Edward Robinson in this consolidated appeal. The three appellants, defendants below, were convicted of assaulting two county correctional officers at the Sherbourne County Jail while they were detained there. They were there pursuant to a contract between the United States Marshal Service and the county jail by which the jail agreed to house federal detainees in the custody of the marshal. Isn't that, as a matter of fact, the type of institution almost all of them are detained in while they're awaiting trial? Yes, Your Honor. Mr. Luedtke had been sentenced in his case and was awaiting designation to a Bureau of Prisons facility. The other two had cases pending and were awaiting trial or sentencing in those cases. The issue in this case is whether that contractual relationship alone is sufficient to establish that the correctional officers were assisting the marshal service in the performance of its duties, which is the standard under 18 U.S.C. 1114 for establishing federal jurisdiction. This is an issue of statutory construction and so of course we look to the language of the statute itself. The common meaning of the term assisting goes beyond simply providing services pursuant to a contract. It implies or incorporates the idea of a supervisory relationship between the principal and the one providing the services. In other words, the one providing the services is an assistant subject to the direction and the supervision of the person contracting the services. Wasn't there in fact some supervision? There were visits to make sure that the prison facility was up to snuff and that sort of thing? The intergovernmental service agreement, which is the contract, provided certain minimum standards that had to be met in order to qualify for- The marshals did inspections pursuant to that, didn't they? There were annual inspections to be sure that the Sherbourne County Jail was living up to its obligations under the agreement. But as far as the marshal service having any supervisory authority over the functioning of the jail or the supervision of its staff, there was none. The marshal service had no employees stationed at the- Yes, Your Honor. And the record establishes that even with respect to federal detainees, the marshal service, apart from the standards required in the service agreement, for example, there are standards about medical care and that they are deemed to be medium security detainees. But if, for example, the marshal service wants someone in segregation or wants someone in the general population or in a particular unit, those are suggestions that can be made. But the Sherbourne County Jail makes its own decisions with respect to that. The marshal service has no authority other than, of course, if it's not satisfied, it can terminate the contract. But it has no supervisory authority or responsibility or oversight over the functioning of the jail or of its staff. They had no involvement in the hiring, in the training, in the promotion, in the evaluation of the staff, the correctional officers in this case. In fact, there's no reason to believe that the marshal service even knew that these two individuals existed until this assault occurred. And, in fact, the marshal service only became aware that this assault occurred when the Sherbourne County Jail informed them that it had- Why is this arrangement not analogous to that between the Secretary of the Interior and the Indian tribe in the Roy case? Your Honor, the issue in the Roy case was a little different, which was determining whether the BIA, Bureau of Indian Affairs officer, was, in fact, a federal employee. The court did not look at the assisting prong. The issue was, is that person, by virtue of his relationship with the BIA, actually a federal employee? And the court determined- One there. There was a contract involved, but by virtue- The contract actually created an employer-employee relationship, such that the court determined that that officer at issue there was actually a federal employee. So, at which point, there's no question that the statute applies. It did not get into the issue of how we determine whether a local official or private individual who is providing a service to the government as a vendor, what is required for that person to be assisting the federal officer. Your Honor, our position is also buttressed by the structure of the statute itself, which applies to federal employees, as in the Roy case, while engaged in official duties, and persons assisting such officers. So, in other words, the statute does not provide for coverage for anyone providing services to the government or anyone performing an official function, but rather, it requires that the assistance be to such officer, referring back to the federal employee while engaged in official duties. Here, there is no federal employee who is being assisted. There may be that the jail was providing services that otherwise the marshal service as an agency would have been required to provide itself, but this contemplates a supervisory relationship between some particular federal employee and the person who is assisting that employee as an assistant to the person in the supervisory position. There is nothing like that relationship here. In addition, the legislative history- What would your position be if, on that particular day, a United States marshal happened to be there and was attacked, and they came to his aid and were also attacked? I would have to think about that, but I think that in that situation, contract or not, that would be an example of someone who is assisting, very directly, a federal employee, namely the person being attacked, and therefore, the statute would apply. Now, let's posit, though, that the marshal was just physically there and was not the person attacked, but he was there doing supervisory duties of the contract day-to-day. I don't think that the mere presence of the marshal, if his presence has no bearing on the assault, he's in a different unit or whatever, but is not involved in the assault in any way, I don't think that is sufficient to trigger jurisdiction. In fact, in the Reid case, which we've cited, the Fifth Circuit case, and there seems to be a division or a split of authority within the Fifth Circuit itself, but in the Reid case, I would say that the facts were somewhat similar to that. The fact that there was an FBI agent and a member of the Joint State Federal Robbery Task Force in hot pursuit of this bank robber during which the assault occurred on a local officer, and the Fifth Circuit said that the mere fact that the federal officers were part of the chase was not sufficient to establish that there was a bank robber. The officer who was assaulted, a local officer, was assisting the FBI agent because he had not done anything to assist the FBI, and if anything, the court said, the FBI was assisting him when they arrived at the scene. I think that . . . I think there's no question that they're doing that, and I would say that the point that you're making, Your Honor, is consistent with the cases that the government cites that go the other way, which focus on the performing of a federal function is the language that is used by many of those cases. My problem with those cases is that's not the language of the statute, and those cases are not wedded to the language of the statute, which it seems to me is the beginning and end of the analysis here. In the Reed case and the Sapp case, they parsed the language of the statute, and both came to the conclusion that assisting requires more than simply a delegation of authority, but rather an actual supervisory relationship, which . . . Doesn't the federal function come from some discussion in the Supreme Court's Fiala case, and shouldn't we give that some respect? Obviously, we should always give respect to what the Supreme Court has to say, but that dicta came up in a very different context, which was the issue of whether a defendant to be guilty of a conspiracy, the object of which is to assault a federal officer, whether there is a requirement that the defendant know that the person was a federal officer. And the court said that because the statute protects federal functions, as well as federal officers, that specific intent requirement does not exist. I would say that that is a very different context from what is required to show that someone is assisting, which where there is specific language in the statute which can be interpreted, and it would not be appropriate, and the Supreme Court certainly did not suggest that we should inject into the statute the language providing a federal function, which Congress could have made as the basis. of the statute, but did not. Your Honor, unless there are other questions, I will reserve the remainder of my time. Good morning, Your Honor. This is Tom Hollenhorst for the United States. I represented the government below in this case. As the defense has correctly pointed out, really the only issue in this case is what does the word assist mean in the statute? The defense has argued to this court that assist means directly assisting, and yet the statute does not say directly assisting. It says assisting. If Congress had wanted the statute to be narrowly construed as the defense is arguing, then Congress could have easily modified that term. In fact, when Congress amended the statute in 1996, it made it even broader because the statute used to say employed to assist. It now says assists. Also, at the time of that amendment in 1996, Congress was well aware of all of these cases cited in the government's brief. Congress did nothing to distinguish those cases, and as the court is well aware, under one construct of statutory interpretation, if Congress is aware of law and lets it stand, then Congress intended to let it stand. I know you cite the Amma case. Are there any published opinions holding that an assault on a county official falls under 1114? Your Honor, I believe that our brief cites every case on this issue. Do any of those apply to a county official? Yes, Your Honor. The Murphy case in the Fourth Circuit, we believe, is directly on point. That was a 1981 case that came out after FIOLA. That's the first case we cite in our brief. That's on all fours with our facts here. The Fourth Circuit, I believe- They were acting pursuant to a contract? Yes, Your Honor. And that's the case where, as the court may recall, that the Fourth Circuit said it didn't even matter if there was a contract. As long as the correction officials are performing the functions of the marshal service, that that is enough. And the court specifically stated, which is referenced in our brief, that- Let's see if I can find that. I'm having trouble. Well, anyway, I cannot find the citation at this point, but it's in the brief. But it's significant here that the contract provides for someone else, county officials, to provide a core function of the United States Marshal Service. The Marshal Service has five core functions. We don't need to go into all of them, but one of them is clearly prisoner custody and safekeeping. Here, the Marshal Service has, in a way- It has contracted out that service throughout the country. The Sherbourne County Jail is one of those facilities in which it's contracted with. These employees, then, who were assaulted, were performing duties commensurate with that of the United States Marshal. Not only that, but the persons who assaulted them were federal detainees, the very people who are the purpose of the contract in the first place. This is not a case where the government has charged an assault committed by simply state prisoners sitting in a state prison. It's charged only federal detainees sitting in a prison whose officers were charged to guard those prisoners. Does the record show anything about whether the Marshal Service investigated the circumstances of this after the fact? Your Honor, there was a federal marshal who was designated as the federal case agent in the investigation. His name was Deputy Wooten, and he testified for the government at the motions hearing. The primary investigation, though, we must concede was done by a sheriff at the Sherbourne County Jail. Your Honor, we feel that these cases that have been decided in the wake of FEOLA- There's five circuits that have decided this issue, and all four is with the government's argument today. There isn't one case, there isn't one reported case that has decided otherwise in a contract kind of case. Now, addressing the defendants, the only two cases the defendants cited, really, for this proposition are Reed and Sapp. Well, the Reed case is in the Fifth Circuit, and that's the one where a purely state officer pursued a bank robber, confronted the bank robber, and then was shot at. Then and only then did a FBI agent and another state officer show up on the scene. So it cannot be said in that case, no one could say, that the state officer was assisting an FBI agent because he wasn't. And that's what the Fifth Circuit said. But what's significant is that before and after that decision, the Fifth Circuit addressed cases virtually identical to here, at least the same issue. And those cases are cited in the government's brief. There's Jacques Beltran decided in 2003, where a federal prisoner assaulted a correctional officer employed by the Corrections Corporation of America on a contract to assist BOP officers. Then came the Reed decision. But then came the Gardner decision in 2007, where an employee of a private protective service agent under contract to guard a federal prison in a hospital setting was deemed to be protected under the statute. So it's clear that even the defense's own case, its only really published case that it cites, is clearly distinguishable. Even the Fifth Circuit distinguished it before and after. The Sapp case is a case that has never been cited by anyone for the proposition advanced by the defense. And in fact, in Sapp, ten years after the decision, the Ninth Circuit reaffirmed FIOLA's teaching that Section 1114 is designed to protect not only federal officers, but federal programs, the type of program that we have here. And that's United States v. Sierra cited in our brief. So let me posit a little bit different. The Department of Agriculture provides child lunch services. And they contract with a local school. And a lunchroom counterwoman is assaulted. Is that now a federal offense? Your Honor, I think the heart of the question goes to what is the federal function? What is the core function that is being served here? That is far more remote from our case, of course. The Matthews Court addressed that. Is it that remote? Well, I believe the government's position would be that if the Department of Agriculture hires employees to perform functions that would be identical to federal agriculture officers, and one of those persons is then assaulted in the course of performing that duty, that he would stand? The only difference is that a Department of Agriculture employee wouldn't be handing out school lunches as a normal part of their duties. Correct. And I think it's just that the federal government is a large institution, but it does not have the people to perform all of its functions. So it needs services of other agencies, and sometimes state agencies. I guess the question here, it's not as if this would go unprosecuted. There are certainly state offenses available. And I guess the question is, is this properly brought federally? Your Honor, the government has not brought charges against this. This is not a garden variety assault case. This is an assault committed by three federal detainees against corrections officers who were performing identical duties as would be performed by marshals. There's no stretch here. As the Matthews Court cited in the government's brief suggested, this could go too far. The government has not gone too far here. There are instances which we could talk about where maybe the government could go too far. But here when Congress and the courts draft a very broad statute which says assisting, assisting, and then the court, the Supreme Court states that that assistance includes both officers and federal functions of those officers, that's precisely the facts of this case. And that's what five circuits have held. The defense in its opening statement of the issue says that there's a split in the circuits. There is not a split. Let me ask you, do all five of the cases you talk about involve a contract and a situation where there's not a federal employee physically present? Not all five circuits have addressed the precise issue here. That is a prisoner in a setting, a prisoner setting. Do any involve a contract where there's no federal official present? Yes. All of those cases cited by the government involve cases where federal agents were not present and did not directly supervise. And state officials are acting pursuant to a contract? Either state officials or private companies assisting the federal function. So, for example, in one- Are there no detainees involved in every circumstance? No, Your Honor. Some of these cases cited by the government involve, for example, one of them is a handyman at a hotel that has been seized by the U.S. Marshals. The Marshals then contracted out a company to fix up that hotel or that apartment house, and that handyman was then assaulted. Well, the court in that case held that that did fall under the purview of the statute. That's the case that questioned how far can this go, and I think that that case is on the outer limit because it's a private institution. Is it really a core function of the U.S. Marshals Service? The court held it was. I think it was a federal function. Here we have a just spot-on core function of the Marshals. We have federal detainees who have been charged, and the contract between the United States Marshals and the Chagrin County Jail was designed to govern these federal detainees. Those three factors, I think, make this just right in the heartland of what that statute was trying to do. As to the sentencing issue, I'd just like to point out, of course, as the court is aware that the plain error is the standard here. In a 30-page sentencing transcript, Judge Frank, a very experienced district judge, had hundreds of sentencings in the past. The defense points to a few lines of that transcript to somehow suggest that Judge Frank didn't know he had discretion to consider the defendant's upbringing. It sure sounded like that. The record is odd. It's an odd thing. I think that you can interpret it in many ways. The way the government interprets it is that the judge was referring to something he had said sort of a paragraph before in the transcript, but it's clear from the whole record that the judge did consider the 3553A factors. It was extensively briefed. He never suggested that he was not going to consider the 3353A factors. We believe that even if there is some procedural error there, that it certainly is not plain error, given that Robinson received a sentence less than his two co-conspirators and received a within-guideline range sentence, and in fact a sentence that in effect was far below an in-guideline sentence because half of it ran concurrently. Well, it's fair to say Judge Frank is talkative. Yes, he is at times talkative, Your Honor. I think that he was showing, and the record is clear, that he was really showing compassion, I think, to the whole thing, the victims and the defendants, and he was trying . . . So when he says, and the law does not require or permit me in my judgment to look at that, what do you think that that is? Well, we believe that he was referring, as stated in our brief, that he shouldn't be looking at the other defendants' backgrounds that he had considered because he talked about seeing a lot of different people in his courtroom and a lot of different people with different backgrounds, but I think he was saying that he did not look to those cases. He's looking to this case. That's the way we interpreted it. Why wouldn't it be him looking at the statement just prior to the use of that word where he's talking about, I've made mistakes, many have made mistakes? He says, in the sentence before, the one cited there is, and I made my share of mistakes over the years, and we're at a point now with a serious offense like this where simply justice does not require and the law does not require or permit me in my judgment to look at that. Why wouldn't that be . . . That could be it, Your Honor. It's unclear. I think we can agree on that, but what's not unclear is that Judge Frank clearly knew he had the discretion to consider the defendant's difficult background. It concludes, other than to say that I've seen it, I'm sorry, but it plays no role in what I do here this morning. I think that's a reasonable interpretation, Your Honor, of what he meant to say. That's all we have unless there are any further questions. Thank you. Mr. Richman. The government emphasizes that this was a core federal function because these were federal detainees, but I want to emphasize that there's nothing about the government's argument that would require that the perpetrators of the assault be in federal custody. Yeah, I thought about that, too, because I was going to ask a question about that, but the more I thought about it, would they really be, if they're supervising state detainees, would they really be assisting the marshals in the marshals' duties? Well, the record shows in this particular case that the gamma unit where the assault occurred had a mixed population of state and federal detainees. The correctional officers are assisting the marshals by supervising the federal detainees who are there. I would say that it's irrelevant who perpetrates the assault, county or federal, because at that moment the correctional officers are assisting the marshals' service. By supervising the state detainees? No, because there are federal detainees who are being supervised at that same time. Being stationed in the gamma unit with federal detainees is a service to the marshals' service, and so it doesn't matter who assaults them. But I would say that we go much, much further than that. Not, I think that you're completely correct in your Department of Agriculture analogy, and similarly, I think that the various vendors who serve the Sherbourne County Jail, without whom the jail couldn't function, such as the food services at the jail, the people who install the bars on the cells, all of those vendors. That's almost like the handyman case, isn't it? Well, in fact, if anything, Your Honor, as I've argued in the brief, I think the handyman case is an easier case, is less of a stretch, because that hotel was being managed directly by the marshals' service. It's as if the handyman was working in a Bureau of Prisons facility. Here we have a county facility, county officers. There could have been a county defendant who could be prosecuted in county court. There is no federal jurisdiction here. Thank you, Your Honor. Very interesting arguments. Thank you. That concludes the argument calendar.